## CHARLEY McALLISTER & BUD WALSER v. THE STATE.

### No. 4180.        Decided May 12, 1909.

**1.—Theft—Separate Taking—Charge of Court—Misdemeanor.**

Where upon trial for theft the evidence showed that the defendants stole two bales of cotton from the same place at practically the same time, it was one offense and no charge of separate offenses and the question as to whether they were misdemeanors was necessary; however the court having submitted such a charge which was favorable to the defendants the defendants could not complain.

**2.—Same—Other Offenses—Charge of Court.**

Where upon trial for theft there was evidence of other thefts, for the purpose of affecting the credibility of defendants as witnesses, and the court limited said testimony thereto, there was no error.

**3.—Same—Argument of Counsel.**

Where upon trial for theft the argument of State's counsel in the light of the record was not necessarily ground for reversal, and there was no instruction requested withdrawing same from the jury, there was no error.

**4.—Same—Bill of Exceptions.**

Where upon an appeal from a conviction of theft there was no bill of exceptions reserved to the matters alleged as error the same could not be considered.

Appeal from the District Court of Montague. Tried below before the Hon. Clem B. Potter.

Appeal from a conviction of theft over the value of $50; penalty, five years confinement in the penitentiary.

The opinion states the case.

*Geo. S. March,* for appellant.—On question of separate offenses: Cody v. State, 31 Texas Crim. Rep., 183; Harris v. State, 29 Texas Crim. App., 101; Barnes v. State, 43 Texas Crim. Rep., 355, 3 Texas Ct. Rep., 584; White v. State, 11 Texas, 769. On question of argument of counsel: Hatch v. State, 8 Texas Crim. App., 416; Crawford v. State, 15 Texas Crim. App., 501; Sterling v. State, 15 Texas Crim. App., 249; Fuller v. State, 30 Texas Crim. App., 559.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—The appellants were tried together without objection, in the District Court of Montague County, and were, on February 3, 1909, found guilty of theft of property over the value of $50, and their punishment assessed at confinement in the penitentiary for a period of five years. They were charged with stealing two bales of cotton, the property of one J. K. Bruce, from his possession and

that of McNabb, Winder & Hunt, a partnership composed of the three persons named, whose initials were given in the indictment.

1. The theft was clearly shown by the State's testimony and the taking is in express terms admitted by both appellants. They sought, as we understand, by their testimony to show that the property was taken at different times or under circumstances that would constitute the taking of the two bales of cotton, separate offenses. On this subject McAllister testifies as follows: "We took my wagon sometime after midnight and went down to the gin, and stopped it just in the lane near the south corner of the gin lot, where there is a low place with a high bank, and went over in the gin lot some thirty to forty yards from the wagon and got a bale of cotton, rolled it over the fence, and down to the wagon and rolled it in. After we got the bale in I told Bud that I would like to have a bale also. Bud told me that we had better go, and we stayed there and argued about the matter for sometime. I wanted a bale, too. The wagon was in a by-street behind the yard, and we left it there and slipped through the yard to see if anyone was looking and everything quiet. We took another bale and rolled it over the fence, just like we did the first one, and rolled it down to the wagon and put it in. And then we went up in town. We might have been there about the gin yard an hour to an hour and a half. I do not know just how long we were there."

Bud Walser, the other appellant, testified as follows: "As I passed by the gin that evening going to Bowie I decided that I would come down to the gin yard that night and get a bale of cotton. I told Charley McAllister about it and asked him to take his wagon and go with me. He agreed to do so and that night some time after midnight we went down to the gin yard and stopped the wagon near the south corner of the yard and got over the fence and went up the fence some piece and rolled a bale over the fence and down on the bermuda grass to the wagon and rolled it in. Then Charley wanted to get another bale, and I told him not to do it, that we might get caught. We talked about the matter there in the road for some bit, then slipped around through the yard, and seeing no one, we then got another bale just as we did the first one and rolled it down to the wagon and put it in. Then we went to town." It will be observed that there is no time given between the taking of the first bale and taking of the second bale. It is obvious that it was taken at the same place and for all practical purposes at the same time. If, of course, it were taken at different times, the offense would, under the evidence, be a misdemeanor and not a felony. We doubt, under the circumstances, whether it was essential for the court to have submitted the matter of separate takings to the jury at all. However, the court did instruct the jury as follows: "If you believe that the defendants took said two bales of cotton, yet, if you believe they took said two bales of cotton at different times, or

took one bale and at the time of such taking did not then intend to take the other, but after the taking of the first bale was complete they then formed a design to take another bale from the same yard as the first was taken from, and afterwards did so then they would constitute two separate misdemeanors and they can not be convicted of a felony therefor, and you will acquit the defendants, or if you have a reasonable doubt as to whether there was one taking or two takings, as defined in this section of this charge, you will find both defendants not guilty." We have no doubt that this is as favorable, indeed, a more favorable charge than the appellants were entitled to receive. The court also limited certain evidence of other thefts admitted by the appellants for the purpose of affecting their credibility as witnesses and the jury were in terms instructed not to consider this matter for any other purpose.

2. The only two bills of exceptions contained in the record are with reference to the supposed improper argument of counsel for the State. It is recited that Mr. B. A. Winter, the assistant county attorney, in his argument to the jury, said in substance: "These men are wholesale thieves and not retail. That this man McAllister, with no education, and with blanch face, needs to be put in school, and stepping up to A. J. Brown, one of the jurors sitting in this case, patted him on the knee and said, 'Mr. Brown, if you turn such men as these aloose you will have to risk the consequences.'" It is also recited that Mr. C. F. Spencer, county attorney, in the closing argument to the jury, used this language: "Now, go out again and turn these two self-confessed thieves aloose on us again. If you do turn such men as these aloose on the county to run at large, you had just as well tear down the walls of the courthouse, and throw the jail doors open. It is very seldom that I appeal to jurors to convict, but in this case I appeal to you in the name of humanity, in the name of law and order, to convict these two self-confessed thieves and give them the highest penalty." We think some of the language of the appeals was unnecessary and probably not justifiable. Whether in any case a reversal is to be had on account of argument of counsel, must to some extent depend upon the facts of each particular case. We do not believe, under the facts of this case and in the light of this record that the argument complained of is ground for reversal. Besides, there was no instruction requested by counsel for appellant charging the jury to disregard the language used and withdrawing same from the jury.

3. There are other matters urged as grounds for reversal, relating to matters occurring on the trial, not evidenced or preserved by bill of exceptions, and in this condition of the record, can not be considered.

The judgment is affirmed.

*Affirmed.*